IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**LAWRENCE E. COMBS,**

    Plaintiff,

v.                                                                                                                  Civil Action No. **3:20CV563**

**T. GIDDENS,** *et al.*,

    Defendants.

**MEMORANDUM OPINION**

Lawrence E. Combs, a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action.[1] By Memorandum Opinion and Order entered on May 31, 2022, the Court dismissed all of Combs's claims except for Claim Four, wherein Combs claimed

> Defendants Vandermark and Foster, [in their official capacity,] violated Combs's rights under Title II of the Americans with Disabilities Act ("ADA") when they denied him: (a) access to a sufficient number of wheelchair accessible showers; (b) access to safety ramps on walkways; (c) equal access to a microwave; and, (d) tables suitable for wheelchair users.

---

[1] That statute provides, in pertinent part:

> Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

(ECF No. 30, at 3.) The matter is before the Court on the Motion for Summary Judgment filed by Defendants. Combs has responded. The Motion for Summary Judgment will be granted in part and denied in part.[2]

## I. STANDARD FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c), (e) (1986)).

In reviewing a summary judgment motion, the Court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A mere "*scintilla* of evidence," however, will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a

---

[2] The Combs employs the pagination assigned by the CM/ECF docketing system. The Court corrects the spelling, punctuation, and capitalization in the quotations from the parties' submissions. The Court omits the emphasis in the quotations from the parties' submissions.

2

preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of their Motion for Summary Judgment, Defendants submitted the affidavit of M. Vandermark ("Vandermark Aff.," ECF No. 38-1.) In opposition, Combs's submitted his own sworn declaration. ("Combs Decl.," ECF No. 40-1). In light of the following submissions, the following facts are established for purposes of the Motion for Summary Judgment.

## II. SUMMARY OF RELEVANT FACTS

Combs is confined in Sussex II State Prison ("Sussex II"). (Vandermark Aff. ¶ 1 n.1.) Combs is disabled and confined to a wheelchair. (Combs Decl. ¶ 1.)

### A. Combs's Inmate Helper and the Grounds at Sussex II

According to Vandermark:

> [Combs] has been assigned an inmate helper, who is trained and paid by VDOC, to push his wheelchair when needed. This trained inmate is housed in the same pod as Combs. Staff at the prison are aware that if an inmate in a wheelchair is on the pass list to go to school, programs, meals, or appointments, etc., staff will also allow and inform the inmate helper to assist the wheelchair user in getting where he needs to go. Also, if Combs is escorted to the medical department for an appointment, the security staff in the medical department will call the building to send the inmate helper over to assist Combs in returning to the building.
> I also understand Combs has complained about a lack of railings along the outdoor walkways at Sussex II. While there are no railings along the outdoor walkways (which are effectively wide sidewalks) at this facility, Combs's ability to navigate about the facility is not impacted by a lack of railings because he has an inmate helper to assist him and because railings would not assist someone in a wheelchair navigating on outdoor walkways. Sussex II is designated by VDOC as

3

> a "flat" facility, meaning there are no hills or major inclines that would make it particularly difficult for a person in a wheelchair to get from building-to-building. Programming and access to meals and medical appointments typically takes place on the ground-level of any building. If a program or service needs to be access[ed] by an inmate with a mobility issue, Sussex II would make accommodation (such as a change in location) to ensure that the inmate could access the service, if necessary.

(Vandermark Aff. ¶¶ 8, 9.) Combs responds that, "My wheelchair pusher is not trained and merely helps me by pushing my wheelchair, often times at the risk of suffering an accident due to not having proper ramps to accommodate to wheelchairs." (Combs Decl. ¶ 4.)

### B. Tables and Showers in Combs's Housing Pod

"Combs's cell within his pod is wheelchair accessible. It is larger than a typical cell to accommodate mobility within the cell with his wheelchair. Handrails have been installed in the cell to assist with his movement while in the cell so that he can better transition to the toilet or bed." (Vandermark Aff. ¶ 13.)

"Each pod houses a maximum of 88 inmates who can be housed in a total of 44 cells per pod. There are currently 82 inmates in Combs's pod." (Vandermark Aff. ¶ 5.) Vandermark contends that there are nine inmates in Combs's pod confined to a wheelchair. (*Id.*) Combs asserts that there are sixteen people in wheelchairs in Combs's pod. (Combs Dec. ¶ 3.)

According to Vandermark,

> Both the pod tables and the dining hall tables can accommodate inmates in wheelchairs. The tables in the pod seat four inmates per table and the stools are attached to the table. Where there is a wheelchair accessible spot at the table, the stool has been removed so that the inmate in the wheelchair can access the table. By removing the stool, the wheelchair can wheel right up to the table. In my experience, even though the tables are designed to accommodate one wheelchair,

an inmate will place his wheelchair either over the seat itself or in between two seats.

(Vandermark Aff. ¶ 4.) Vandermark swears that, "[e]ach pod has nine tables, and in each pod there are five wheelchair accessible seats where the stools have been removed." (*Id.* ¶ 5.) Combs contends that there is only a single table where the stool has been removed. (Combs Decl. ¶ 6.)

There are six showers in Combs's pod, one of which is wheelchair accessible. (Vandermark Aff. ¶ 11.) Vandermark asserts that, "[a]ny of the inmates may use the wheelchair accessible shower, but they are typically respectful and let the inmates in wheelchairs access the wheelchair accessible shower." (*Id.*)

> There is a shower chair that is accessible to inmates for use in the wheelchair-accessible shower. There are no handrails in the wheelchair accessible shower at this time. Sussex II is scheduled to begin renovations in October 2022 and a request has been made for the installation of handrails in the wheelchair-accessible showers.

(*Id.* ¶ 12.)

### C.     The Microwave in Combs's Pod

Vandermark swears:

> Microwaves in the pods are operated by designated and trained inmate workers who assist all inmates, regardless of whether or not they use wheelchairs. The inmate worker places the food in the microwave, sets the timer, removes the food when it is done, and hands it to the inmate waiting for the food. The microwave workers assist the entire pod with microwave access at all times. In the event that the microwave worker is unavailable (so that he can attend programming or a medical appointment, for example), then another inmate worker will take his place and assist all inmates in the pod with the microwave.

(*Id.* ¶ 7.)

5

Combs disputes the above facts and states:

> There are no, nor have there ever been any inmates who are employed or trained to operate the microwave. There is only a microwave where I am housed which is sitting on top of a high shelf not wheelchair accessible.

(Combs Decl. ¶ 5.)

### D.   Seating in the Dining Hall

Vandermark swears that:

> The dining hall can accommodate a maximum of 88 inmates at a single time. There are 24 tables in the dining hall and there are 12 wheelchair-accessible dining seats. Typically, an entire pod goes to the dining hall at the same time and inmates in a pod will have time to eat their meal before exiting and allowing the next pod group to enter the dining hall.

(*Id.* ¶ 6.)

## III.   ANALYSIS

### A.   Combs's ADA Claims

"Title II of the ADA provides that no qualified individual shall, 'by reason of [a] disability,' be denied the benefits of public 'services, programs, or activities' or be subject to discrimination by a public entity." *Fauconier v. Clarke*, 966 F.3d 265, 276 (4th Cir. 2020) (alteration in original) (quoting 42 U.S.C. § 12132). In general, a plaintiff seeking recovery under Title II of the ADA must demonstrate "that (1) he has a disability; (2) he is otherwise qualified to receive the benefits of a public service, program, or activity; and (3) he was 'excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of h[is] disability.'" *Spencer v. Earley*, 278 F. App'x 254, 261 (4th Cir. 2008) (quoting *Constantine v. George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005)). "[A]n otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee

6

offers. . . . [T]o assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made." *Alexander v. Choate*, 469 U.S. 287, 301 (1985). Of course,

> the disabilities statutes do not require that substantively different services be provided to the disabled, no matter how great their need for the services may be. They require only that covered entities make "reasonable accommodations" to enable "meaningful access" to such services as may be provided, whether such services are adequate or not.

*Wright v. Giuliani*, 230 F.3d 543, 548 (2d Cir. 2000).

Defendants' Motion for Summary Judgment focuses on the third element. Defendants contend that "Combs has not been excluded from any program or service at Sussex II on the basis of his disability." (ECF No. 38, at 8.)

### 1. The Grounds and Combs's Inmate Helper

In Claim 4(b), Combs contends that Defendants violated his right under the ADA when they failed to provide safety ramps and handrails. The evidence reflects that Sussex II is a flat facility, and most (if not all) of Combs's daily activities and programing take place on the ground floors of the buildings. Additionally, Defendants provide Combs with an inmate helper to push Combs's chair.[3] Combs fails to demonstrate that he has been denied access to any service, building, or activity by the lack of ramps and handrails. Accordingly, Claim Four (b) will be DISMISSED.

### 2. Access to Showers

There are six showers on Combs's pod. One of the six showers in the pod is handicap accessible. Although any inmate can use the handicap accessible shower, the inmates generally

---

[3] Combs's vague statement that he is "often times at the risk of suffering an accident," (Combs Decl. ¶ 4), because of the lack of ramps is insufficient to demonstrate that he has been denied access to any program, activity, or location at Sussex II. *See United States v. Roane*, 378 F.3d 382, 400–01 (4th Cir. 2004) (internal quotation marks omitted) (citations omitted) ("[a]iry generalities, conclusory assertions and hearsay statements [do] not suffice to stave off summary judgment").

7

are typically respectful and let the inmates in wheelchairs access the wheelchair accessible shower. There are currently 82 inmates in Combs's pod and six showers. Thus, there is roughly one shower for every fourteen inmates in the pod. According to Combs, there are currently sixteen wheelchair bound inmates in the pod, who must share the wheelchair accessible shower. On this record, Combs has roughly the same access to shower facilities as nondisabled inmates. *See Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012) (denying summary judgment where the refusal to accommodate inmate's disability kept him from accessing showers on the same basis as other inmates). Therefore, Combs fails to demonstrate that he was discriminated against in the provision of showers because of his disability. Accordingly, Claim Four (a) will be DISMISSED.

### 3. Microwave

Denial of equal access to a microwave in prison can provide a viable basis for a claim under Title II of the ADA. *Savoy v. Bishop*, 706 F. App'x 786, 791 (4th Cir. 2017) (reversing grant of summary judgment where there was a genuine issue of material fact as to whether microwave was a reasonable height for access by a wheelchair-bound inmate). There is a genuine dispute of material fact as to whether Combs can access the microwave because he disputes the existence of any inmate designated to assist the other inmates in operating the microwave. Accordingly, the Motion for Summary Judgment will be DENIED with respect to Claim Four (c).

### 4. Accessible Tables

Similarly, there exist material disputes of fact as to whether Sussex II has equal access to seating at tables in the cafeteria and Combs's housing area. With respect to Combs's housing unit, there are nine tables, each with seating for four individuals. Thus, there are thirty-six total seats available in the housing unit for 82 inmates. According to Combs, only a single table has been

altered to make it handicap accessible for the 16 wheelchair bound inmates.[4] *See Brown v. Cnty. of Nassau*, 736 F. Supp. 2d 602, 619 (E.D.N.Y. 2010) (denying summary judgment where defendant failed to prove it had provided sufficient handicap accessible seating). This evidence is sufficient to show that Defendants' failure to accommodate prevented Combs from accessing tables on the same basis as non-wheelchair bound inmates.[5] *Jaros*, 684 F.3d at 672; *Boston v. Dart*, No. 14 C 8680, 2015 WL 4638044, at *3 (N.D. Ill. Aug. 4, 2015) (plaintiff's wheelchair did not fit under tables "which all detainees used for meals and leisure activities"; although he did not "completely miss meals or leisure activities," he adequately alleged access "on a different basis than other detainees").

Neither Defendants nor Combs provide a clear picture of the configuration of the seating in the cafeteria. Defendants fail to articulate clearly how the cafeteria tables have been altered to make them wheelchair accessible. To the extent that they assert stools have been removed to make a space wheelchair accessible, it is unclear whether Combs's statement that only a single stool has been removed applies to the tables in the cafeteria or only to the tables in the pod.

Even assuming there are twelve wheelchair-accessible spots at the tables in cafeteria, Combs insists that there sixteen wheelchair-bound inmates in his pod. Thus, according to Combs, the wheelchair-bound inmates do not enjoy the same access to table space in the cafeteria that is

---

[4] Defendants, of course, assert that there are only nine wheel-chair bound inmates in Combs's pod.

[5] Defendants assert that some wheelchair-bound inmates can access the tables even if a seat at the table has not been removed. There is no evidence that indicates Combs is able to access the tables if a seat has not been removed. Further, Defendants have not directed the Court to any relevant precedent that indicates that the current seating arrangements foreclose Combs's claim regarding equal access to tables.

9

enjoyed by the non-wheelchair-bound inmates. Accordingly, the Motion for Summary Judgment will be DENIED with respect to Claim 4(d).

### B. Monetary Damages

"[I]n the context of state prisons, Title II [of the ADA] validly abrogates state sovereign immunity and 'creates a private cause of action for damages against the States' only 'for conduct that *actually* violates the Fourteenth Amendment." *Chase v. Baskerville*, 508 F. Supp. 2d 492, 506 (E.D. Va. 2007) (quoting *United States v. Georgia*, 546 U.S. 151, 159 (2006)) *aff'd*, 305 F. App'x 135 (4th Cir. 2008). The denial of equal access to showers and tables fails to implicate any constitutional right. Accordingly, Combs's demand for monetary damages in conjunction with Claims Four (c) and Four (d) will be DISMISSED.

### IV. CONCLUSION

Defendants' Motion for Summary Judgment, (ECF No. 37), is GRANTED IN PART and DENIED IN PART. Claims Four (a) and Four (b) will be DISMISSED. Combs's demand for monetary damages in conjunction with Claims Four (c) and Four (d) will be DISMISSED. Claims Four (c) and Four (d) will be REFERRED to the Honorable Summer Speight, United States Magistrate Judge, for an evidentiary hearing.

An appropriate Order will accompany this Memorandum Opinion.

Date: 10 May 2023
Richmond, Virginia

/s/ John A. Gibney, Jr.
Senior United States District Judge